UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK


----------------------------X
                            :
JOSEPH TIRACO,              :
                            :       12-CV-2273 (KAM)(MDG)
            Plaintiff,      :
                            :       August 16, 2012
                            :
            V.              :       Brooklyn, New York
                            :
NEW YORK STATE BOARD OF     :
ELECTIONS, et al.,          :
            Defendant.      :
----------------------------X


        TRANSCRIPT OF CIVIL CAUSE FOR INITIAL CONFERENCE
            BEFORE THE HONORABLE MARILYN D. GO
               UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          JACK L. LESTER, ESQ.




For the Defendant:          JOSHUA PEPPER, EQ.
                            STEPHEN KITZINGER, ESQ.

Audio Operator:


Court Transcriber:          ARIA SERVICES, INC.
                            c/o Elizabeth Barron
                            102 Sparrow Ridge Road
                            Carmel, NY 10512
                            (845) 260-1377



Proceedings recorded by electronic sound recording,
transcript produced by transcription service

 1           THE CLERK:  Civil cause for initial

 2   conference, Tiraco v. New York State Board of

 3   Elections, docket number 12-CV-2273.

 4           Counsel, please state your name for the

 5   record, starting with the plaintiff.

 6           MR. LESTER:  Your Honor, good morning.  My

 7   name is Jack Lester and I represent the plaintiff,

 8   Joseph Tiraco.

 9           MR. PEPPER:  Joshua Pepper, Assistant

10   Attorney General, representing the New York State Board

11   of Elections.

12           MR. KITZINGER:  Stephen Kitzinger, New York

13   City Law Department, for defendant Board of Elections

14   in the City of New York.

15           MR. CHURCHMAN:  Steven A. Churchman (ph),

16   general counsel for the respondent Board of Elections

17   in the City of New York.

18           THE COURT:  Good morning all.

19           Have the parties had an opportunity to

20   discuss the proposed scheduling order?

21           MR. KITZINGER:  Your Honor, if I may.  This

22   is sort of an odd situation because we've got a pro se

23   amended complaint.  The City Board has answered.  The

24   State Board has submitted a pre-motion letter to Judge

25   Matsumoto.  New counsel for plaintiff has requested

1    that we consent to a second amended complaint.  We've

2    had some brief discussions earlier today -- this is the

3    first time Mr. Lester has been available because I

4    believe he's been on trial -- about what the actual

5    complaint is.

6            We haven't actually -- we don't -- the City

7    Board doesn't understand what the actual allegations

8    are against the City Board, what it's alleged we did,

9    how there was any sort of disparate treatment.  And as

10   such, we're certainly not in a position to consent to

11   the filing of a second amended complaint, now that the

12   time to do so has expired and there's no right to do so

13   under Rule 15.  And quite candidly, I don't think,

14   based on the proposed second amended complaint, a

15   motion for leave to file it would be granted.

16           They want to sue Frank McKay (ph), which is

17   what the second amended complaint seeks to do, add

18   Frank McKay, who is the head of the State Independence

19   Party, as a defendant and pursue claims against him.

20   It doesn't relate to the acts of the City Board or, for

21   that matter, the State Board.  If he wanted to drop us

22   and sue Frank McKay, I'm sure Mr. Pepper would

23   stipulate to that.

24           But we're just at a loss as to what the

25   actual complaint is because this was sort of an odd

1    year with redistricting and the failure of the state

2    legislature to come to terms with the new legislative

3    map.  We had -- the Northern District of New York set

4    the number of signatures to be collected at 75% of the

5    ordinary statutory limit, and we had this Court draw

6    the congressional district lines, and handed down the

7    order the day before the petition started.

8            And to its credit, everything was made

9    available publicly for free, posted on the front page

10   of the web site.  There were links to the maps on the

11   web site, which this Court -- drafted by the special

12   master and then adopted by the three-judge panel.  So

13   we're sort of at a loss as to what the complaint is

14   about the City Board, and I'm sure the State Board

15   would feel the same way about complaints against it.

16           We also litigated a similar case for an

17   Independence Party nomination for the congressional

18   district that covers Staten Island and part of

19   Brooklyn, in Richmond Supreme Court.  And there, the

20   court found that neither the City Board nor the State

21   Board acted improperly.  I'm sort of at a loss to

22   understand why we're here, what the federal claim is on

23   top of everything else.  Neither the City Board nor the

24   State Board acted improperly -- what the federal issue,

25   especially following the 2007 Second Circuit decision

1    in <u>Rivera Powell v. The Board of Elections</u> (ph).

2              So if we could maybe have plaintiff's

3    counsel shed a little light on what the claims are or

4    how he had to take it to federal court, maybe then we

5    would be in a better position to have a discussion on

6    whether this case really needs to go forward and if so,

7    what sort of schedule it should be.

8              MR. LESTER:  Your Honor, if I may.

9              THE COURT:  Go ahead, Mr. Lester.

10             MR. LESTER:  Once again, Mr. Lester on

11   behalf of Joseph Tiraco.

12             Mr. Tiraco was a candidate for Congress in

13   Queens and attempted, through the normal process,

14   petitioning process, to secure a place on the ballot.

15   However, when Mr. Tiraco went to the Board of Elections

16   to attempt to get information specifically required for

17   his ability to obtain ballot access, for example ED

18   lists, summary district lists, the map showing ED's and

19   AD's with Independence Party enrollment contained

20   therein, this information was denied to Mr. Tiraco.

21             So that there was information made publicly

22   available, we acknowledge that.  But the specific

23   information that was needed for Mr. Tiraco to get the

24   signatures from eligible Independence Party voters was

25   denied to Mr. Tiraco.

```
1              We intend -- what Mr. Tiraco did in his pro
2    se complaint -- contended that this was done in a
3    disparate, discriminatory fashion against candidates
4    who are so called insurgent independent candidates.  So
5    he had filed the pro se complaint on this issue after
6    this matter was heard in the New York State court.  He
7    was removed from the ballot.  This issue was raised by
8    his counsel at a hearing in the New York State court.
9    He was told in the New York State court that the issues
10   that you're raising here are federal, constitutional
11   issues, file a federal complaint, which he did.
12             When Mr. Tiraco approached me and we
13   researched and looked into this matter, there was
14   another issue, and that was the way that the county
15   leaders had denied associational rights to party
16   members, in the way that they designated nonparty
17   members as candidates for elective office through
18   what's known as a Wilson (ui) designation.
19             New York State law allows an individual
20   who's not enrolled in a party to get that party's
21   designation, if a committee of that party so
22   designates.  And the way that process worked was also
23   discriminatory and violated this individual's
24   constitutional rights, so we added that as a cause of
25   action.
```

```
 1              THE COURT:  What's the protected class?

 2              MR. LESTER:  The right to franchise, the

 3    right to vote, an individual who's a candidate and also

 4    a voter.

 5              THE COURT:  Discrimination on what basis?

 6              MR. LESTER:  Denying an individual the right

 7    to ballot access, the right to association, the right

 8    to vote.  The protected class is -- because it's a

 9    fundamental right, the right to vote, the right to

10    association, the right to ballot access, there has to

11    be strict scrutiny as to the way the state treats an

12    individual.

13              There is case precedent.  Your Honor, I

14    prepared a supplemental summons and complaint, which I

15    can hand up.  We cite precedent, we cite cases.  If

16    they have an issue with it and would like to make a

17    motion to dismiss and we can argue this in a systematic

18    way.  But we do raise all these issues and we do cite

19    precedent.

20              THE COURT:  Have you shared the proposed

21    amended complaint with the defendants?

22              MR. LESTER:  Yes, I have.

23              MR. KITZINGER:  Your Honor, I have it here

24    and I don't see any precedent cited in here.

25              THE COURT:  Well, it's not normal to have
```

1    cases cited in a complaint.

2              MR. KITZINGER:  Right, but it's normal to

3    actually allege the statutes that we allegedly

4    violated.  For example, the enrollment list is required

5    by statute to be published by the first day of April.

6    They were.  They were put together by the collection

7    district, bound together in a volume by assembly

8    district, as directed and allowed by state law.  We're

9    just at a loss as to what we allegedly did wrong and

10   what -- who else was treated allegedly differently.

11             In the absence of that, it seems like it's

12   certainly a waste of the Court's time to be dealing

13   with complaints that are completely devoid of facts

14   that would support a plausible claim for relief, and we

15   have the city and state government as well who has to

16   deal with this.

17             MR. LESTER:  Judge, I do in the complaint,

18   paragraph 43 and 44, cite almost eight different acts

19   that we allege the Board of Elections undertook

20   intentionally, depriving Mr. Tiraco of ballot access.

21   A map of the congressional district setting forth the

22   election district, the assembly district, the

23   Independence Party enrollment book for the

24   congressional district, the number of enrolled

25   Independence Party voters in the congressional

1    district, the number of signatures needed to qualify.

2             THE COURT:  He didn't know before running

3    how many signatures he needed?

4             MR. LESTER:  No, because -- again, this is

5    all set forth, because it's based on percentage of the

6    independent voters.  Again, these are factual issues

7    which we're happy to go through.  But the complaint, as

8    I say, does set forth the specific allegations, it does

9    cite the causes of action under federal statute and so

10   forth.  There is case -- I mis-spoke.  I don't cite the

11   case precedent here but there is case precedent for all

12   of these allegations.  We've well researched and I'm

13   prepared, if a motion to dismiss is made, to contest

14   that motion.

15            MR. KITZINGER:  Your Honor --

16            THE COURT:  Could you give me a copy of the

17   proposed complaint?

18            MR. LESTER:  Yes.

19            MR. KITZINGER:  Your Honor, if I may, it's

20   on page 10.  For example, there are allegations that

21   the board, some board, whether the State Board or City

22   Board, I don't know which one -- it's not clear in the

23   complaint.  The amended complaint indicates he called

24   the State Board of Elections, so I don't know why he's

25   suing the City Board if that's the case.

1          Moreover, there's no allegation that there

2     was actually a requirement for the City Board, for my

3     client to produce any of these items.  And if there's

4     no requirement to produce them and they weren't

5     produced for anyone else, it's sort of difficult to

6     understand what the complaint is.

7          And with regard to the number of signatures

8     required for ballot access, I believe the State Board

9     published that information on or about the Monday

10     following this Court's decision setting forth the

11     boundaries.  Obviously, it takes a couple of days to

12     put the addresses and the voter data into the computer

13     based on the geographic boundaries and run the numbers,

14     but that information, to my recollection from the prior

15     cases, was published on the State Board web site on the

16     Monday following this Court's ruling setting the

17     boundaries.

18          MR. LESTER:  These are factual allegations

19     which are simply not true.  My client was there.  My

20     client, Mr. Tiraco, is on the record -- his counsel is

21     on the record with these facts in the hearing held in

22     the state court.  This information was given to other

23     candidates and not given to Mr. Tiraco through

24     disparate treatment.

25          THE COURT:  I have to say, I'm a little

1  shocked by your allegation that there was no

2  congressional district map available.  That was posted

3  on this Court's web site.

4  　　　　MR. LESTER:  No, setting forth election

5  district and assembly district, because that's how they

6  get -- the map was available publicly, but a map of the

7  congressional district, setting for the ED's and AB's,

8  which were required for Mr. Tiraco to get signatures.

9  The way the enrollment books are published, they're

10  published for ED's and AB's, and in order for them to

11  know where the Independence Party enrolled voters are

12  located, whether that ED or AB is within the

13  congressional district becomes a critical factor, and

14  that's what was not provided.

15  　　　　MR. TIRACO:  (Ui).

16  　　　　MR. LESTER:  I mean, this could be developed

17  factually in greater detail.  However, this was -- this

18  was the claim again that was made when they had a

19  hearing in the state court, because Mr. Tiraco first

20  had an opportunity to petition the Board of Elections

21  and then to bring a proceeding in state court.  There's

22  a transcript of that entire hearing where this was

23  brought out, all the information that was denied to Mr.

24  Tiraco that was provided to other candidates.  He was

25  told at that time that his remedy was in federal court,

1   which is why he filed a pro se complaint.

2            MR. PEPPER:  I mean, I'm willing to assume

3   for purposes of my motion to dismiss that he made these

4   requests and were denied them.  We'll dispute the facts

5   later if we have to but it doesn't matter for purposes

6   of the motion to dismiss.  My grounds for the motion

7   are set forth in my pre-motion letter, which you have.

8   And since we're actually supposed to appear to talk

9   about discovery, let me suggest that since the Eleventh

10  Amendment essentially shields us --

11           THE COURT:  You're not excused from

12  discovery.

13           MR. PEPPER:  The Eleventh Amendment does

14  exactly that.  In fact, I can cite a Second Circuit

15  case that says this.

16           THE COURT:  Just one second, just one

17  second.

18           I did briefly take a look at the proposed

19  second amended complaint.  You may disagree with the

20  factual underpinnings of the complaint, but I would

21  think it would be far better to proceed on your motion

22  with a complaint that's not drafted by a pro se

23  litigant.

24           MR. PEPPER:  Well, that's fine.  If we're

25  just talking about whether he's going to be entitled to

```
1   file the second amended complaint, he can do that.  We

2   can submit another pre-motion letter and go through it

3   again.  I don't have a problem with that.  But I still

4   say that, you know -- I can cite the case of Smith v.

5   Reagan, 841 F.2d 28.  We can't even be compelled to

6   participate in discovery.  That's what the Eleventh

7   Amendment says.  And I would suggest that we simply

8   stay discovery pending the motion to dismiss.

9            MR. KITZINGER:  Your Honor, the City Board

10  has strong objection to the filing of the second

11  amended complaint for a number of reasons, not the

12  least of which is, there are allegations in here which

13  are completely unrelated to anything that the City has

14  done.  Most of the allegations in the second amended

15  complaint relate to actions that are alleged to have

16  been taken by Frank McKay, who is not part of the City

17  Board, not part of the State Board, not part of any

18  government, as far as I know.

19            As a result, it's inappropriate to be

20  burdening this Court -- he's not a state actor so he's

21  not (ui) either, it would seem.  So it seems to be

22  complaining a whole mess of issues but more

23  importantly, this complaint -- I believe this proposed

24  second amended complaint violates Rule 11, in that

25  there are allegations that we didn't do anything --
```

```
1   didn't do things that we were required to do, which

2   this election law of the State of New York clearly does

3   not require us to do.

4           I would really suggest that before any

5   attempt is made to file a complaint like this, that Mr.

6   Lester actually review the electoral law and the

7   obligation of the City Board of Elections and the State

8   Board of Elections, for that matter, before he throws

9   out allegations that we violated his client's

10  constitutional rights.

11          I would also suggest that he look at Rivera

12  Powell v. The Board of Elections (ph) and Exxon Mobil,

13  which talks about the Rooker Feldman Doctrine, because

14  if you're litigating in state court -- I don't care who

15  told him it was a federal claim.  If he was litigating

16  it and he raised the claims and he lost, he lost.

17          THE COURT:  I do think Exxon substantially

18  cut back on Rooker Feldman and Mocchio (ph) no longer

19  applies.  So I'm --

20          MR. KITZINGER:  Well, Mocchio is clearly

21  gone, but if he fully litigated the claims or had the

22  opportunity --

23          THE COURT:  We don't really know if he did.

24          MR. KITZINGER:  He said he raised them and

25  you need to --
```

```
1              THE COURT:  If it wasn't decided by the
2   state court, it may not be binding.  I don't know.  I
3   really don't know.  If you didn't participate in the
4   state court proceeding, then you may not be in a
5   position to know what was determined, if anything, in
6   state court.
7              MR. KITZINGER:  We should have been a named
8   defendant, because you can't get on the ballot if you
9   don't (ui) City Board.
10             THE COURT:  Well, anyway, whatever the case
11  may be.  It probably was an ill-conceived litigation in
12  state court.
13             MR. KITZINGER:  Well, that's not our fault.
14  But the allegations about -- what Mr. Tiraco just said
15  about, he had a two-year-old enrollment book -- one,
16  you've got to buy the enrollment books from the Board
17  of Elections.  And two, they're produced twice a year,
18  and you have to buy new ones.  You can't --
19             MR. TIRACO:  That's the one I had to buy is
20  the two-year-old one.  That's the one they gave me.
21             THE COURT:  I'm inclined to grant leave but
22  I do think, in light of what Mr. Kitzinger has said,
23  you ought to reconsider some of the allegations set
24  forth therein.  Perhaps it may be useful for counsel to
25  confer on what might be an appropriate -- what
```

1  allegations they think are just totally contrary to the

2  law.

3          MR. LESTER:  I think Mr. Kitzinger is

4  misconstruing what we're saying.  We're not saying that

5  the Board of Elections necessarily violated state

6  statutory obligation.  We're saying, in the way the

7  Board of Elections carried out or conducted themselves

8  through the petitioning process, it was done in such a

9  manner to deny this individual and other similarly

10 situated ballot access.  It's fundamentally a ballot

11 access --

12          THE COURT:  I understand what you're trying

13 to say but I think there may be some factual

14 misunderstanding on your part, so I would -- I do think

15 that it is in everybody's benefit to have the theories

16 of the plaintiff clearly articulated, so that the Court

17 won't be trying to discern from the amended complaint

18 what the theories are.  So I'll grant leave to file a

19 second amended complaint, asserting the causes of

20 action that you've asserted.  But I'm just asking you,

21 Mr. Lester, to heed Mr. Kitzinger and Mr. Pepper's

22 comments and review the factual allegations.

23          MR. LESTER:  Your Honor, if I may.

24 Certainly, I'd be more than happy to do that.  My

25 investigation of the facts up to this point is

```
 1    obviously based on interviews I've had with my client

 2    and other sources.  If Mr. Kitzinger has information

 3    that contradicts anything that I have and it's

 4    definitively established, I'd be happy certainly to

 5    (ui) any misunderstandings that I have, but I believe

 6    it's on solida ground.

 7              THE COURT:  Mr. Lester -- and perhaps it's

 8    appropriate that I air my views.  I share the view of

 9    many that New York election laws are ridiculous.  And

10    that being said, there is a ridiculous New York

11    election law bar, and that has come about because of

12    the intricacies of the law.  I am not -- if I were to

13    vote, I would certainly be in favor of greater ballot

14    access.

15              That being said, the law is the law, and the

16    procedures have a lot to be -- the requirements and the

17    procedures may not be what ordinary citizens might

18    consider appropriate.  But whether or not they raise a

19    constitutional violation is a separate issue.  So I

20    would urge you, notwithstanding your research, to think

21    of it like a tax code.  Whenever I research tax issues,

22    I worry about the issues I don't know to look at, and

23    that is certainly something you ought to keep in mind.

24              MR. KITZINGER:  Your Honor, for (ui) sake, I

25    would really request that you withdraw your granting of
```

1    leave at the present time, until there has been a new

2    second amended -- proposed second amended complaint,

3    which clearly --

4              THE COURT:  Look, the one thing you ought to

5    understand is, there may be factual disputes over what

6    occurred, so just don't waste time on that.

7              MR. KITZINGER:  Your Honor, is the granting

8    of leave that you're --

9              THE COURT:  I said I'm inclined to, yes,

10   grant leave.

11             MR. KITZINGER:  Is it going to include

12   granting leave to add Frank McKay as a defendant, when

13   all of the claims against him have nothing to do with

14   the City or State Boards?  Is it going to require Mr.

15   Lester to make the allegations clear as to not the

16   Board of Elections but whether they're talking about

17   the City Board or State Board?  I mean, these things

18   are pretty fundamental and --

19             THE COURT:  They are not less articulated in

20   the second amended complaint than in the amended

21   complaint.  There is more there.  So if you want to

22   work off the amended complaint, you have my blessings,

23   and then you can get a court opinion and then address -

24   - it's hard for me to believe, in this procedural

25   context, that any order granting a motion to dismiss

1    would be without leave to replead.

2             MR. KITZINGER:  Your Honor, in the amended

3    complaint drafted by Mr. Tiraco, he says the State

4    Board of Elections did A, B and C.  He spoke to the --

5    he called the State Board of Elections.

6             THE COURT:  I'm saying there's more against

7    the City.  To the extent that you don't think it's

8    adequate, so be it.

9             MR. KITZINGER:  Your Honor, it just says

10   Board of Elections here.  It doesn't distinguish, is

11   the problem.

12            THE COURT:  Okay.  Well, Mr. Lester should

13   heed your comments.  If you want to go through a formal

14   motion, fine, I'll set a motion schedule.

15            MR. KITZINGER:  What about adding Frank

16   McKay?

17            THE COURT:  I haven't read it carefully

18   enough.  Certainly, Mr. Lester now knows he has to

19   research the issue of whether or not Mr. McKay is a

20   state actor.

21            MR. LESTER:  I haven't reached it.  That's

22   why he's a state actor.  There's a plethora of case

23   law.  Party leaders acting in the nominating process --

24   the slew of cases -- have been determined to be state

25   actors.  That was very carefully researched.

1          MR. KITZINGER:  If I could just ask the

2     Court to direct Mr. Lester to make clear the

3     allegations -- against whom each allegation is made,

4     whether it's the City Board or the State Board or Mr.

5     McKay.

6          THE COURT:  That's fair enough.

7          MR. KITZINGER:  And to clearly delineate

8     which claims are being asserted against which

9     defendants.

10          THE COURT:  I think that's fair enough.  So

11     you are to redraft.  You'll file it by -- float it by

12     the defendants, Mr. Pepper -- Mr. Lester, and if

13     there's a dispute, you'll set a short schedule for a

14     motion for leave to amend.  But I'm telling the

15     defendants, defective or not, I'm inclined to grant the

16     motion -- motion for leave to amend.

17          MR. PEPPER:  I'm not opposing that as far as

18     that goes, your Honor, although obviously, I still

19     intend to -- if you want to set a briefing schedule now

20     for a motion, that's fine with me, or if I do -- either

21     way.

22          THE COURT:  I assume you'll withdraw your

23     pre-motion -- your letter for a pre-motion conference.

24          MR. PEPPER:  If he files a second amended

25     complaint, then it's moot.

```
1              THE COURT:  Yes.  I just think it's to your
2    benefit to have an amended pleading.
3              MR. KITZINGER:  Your Honor, yes, it would
4    be, if it were -- the second amended pleadings were
5    clear.
6              THE COURT:  We're not going to go over what
7    we've already discussed.  Mr. Lester will consider
8    what's been discussed, float out a proposed amended
9    complaint.  You can file a letter application to me by
10   the end of next week?
11             MR. PEPPER:  Yes.
12             THE COURT:  And you'll tell me whether or
13   not there is consent.  And if there's no consent,
14   opposition will be due the following week.  So August
15   24th, you'll file a letter motion for leave to amend,
16   and any opposition will be on the 31st.
17             MR. KITZINGER:  Your Honor, I am actually
18   out of the office on vacation with my family the next
19   two weeks.  I will be in on the 27th but that's it.
20             THE COURT:  Well, you're going to have to
21   get back to Mr. Lester one way or the other, sooner
22   rather than later.  Can you get a proposed amended
23   complaint out by Friday noon?  That's tomorrow, noon.
24             MR. KITZINGER:  Your Honor --
25             THE COURT:  You'll get it out by -- proposed
```

1  amended complaint by the 24th and you'll respond by the

2  27th with what your view is.

3      MR. KITZINGER:  Yes, I will respond on the

4  27th as to whether or not --

5      MR. LESTER:  Your Honor, the proposed

6  amended complaint by August 24th?

7      THE COURT:  Yes.

8      MR. LESTER:  So that's a week from Friday.

9      THE COURT:  That's a week.

10      MR. KITZINGER:  Preferably sent to me by e-

11  mail.

12      MR. LESTER:  Yes.

13      THE COURT:  Okay.  And then you'll advise

14  Mr. Lester of your views.  Let me just give you a week,

15  the 23rd.

16      MR. LESTER:  The 23rd.

17      THE COURT:  And both defendants will advise

18  Mr. Lester by the 28th whether or not you consent.

19      MR. LESTER:  Just so I --

20      THE COURT:  Actually, I don't need -- yes.

21      MR. LESTER:  Just so I understand it, Mr.

22  Kitzinger would like me to, in separate causes of

23  action, allege what Frank McKay did and what the Board

24  did.

25      THE COURT:  Mr. Kitzinger says that there

1  are several instances -- and it's true, you merely

2  refer to the Board, so you should clarify which one.

3          MR. LESTER:  I'll clarify that.

4          THE COURT:  And if you are in fact seeking

5  to assert a claim against only one defendant, you'll

6  specify which defendants you're asserting.

7          MR. LESTER:  Right.

8          THE COURT:  Or you'll say all the

9  defendants.

10          MR. LESTER:  Right.

11          THE COURT:  It will make it clear.

12          MR. LESTER:  Thank you, Judge.

13          MR. KITZINGER:  And the allegations

14  themselves, which --

15          THE COURT:  I just said that.  He'll specify

16  which defendant entity he's talking about.

17          MR. PEPPER:  Just a point of clarification:

18  So right now, we're only talking the motion for leave

19  to file a proposed second amended complaint.  We're not

20  talking about a motion to dismiss that second amended

21  complaint.

22          THE COURT:  No, you can't, you can't.  You

23  haven't seen it.

24          MR. PEPPER:  Okay, all right.  Then I'll

25  just wait.

```
1              THE COURT:  And any application -- so the
2    defendants will respond by the 28th and any motion one
3    way or the other will be by the 31st.  If there's
4    consent, then you'll just so state.  And if there isn't
5    consent, then it will be a contested motion and the
6    defendants' response will be due the 7th.
7              Perhaps it makes sense for us, if there is
8    an amended complaint, to have another conference, but
9    I'll schedule that if I feel we need to have another
10   conference.  Otherwise, I guess all we need to do is
11   discuss the discovery now.  You have an idea of what
12   Mr. Lester's claims will be and the nature of the
13   discovery.
14             What discovery are you seeking, Mr. Lester?
15             MR. LESTER:  Well, certainly the -- because
16   the allegations pertain to disparate treatment, we
17   would like to know -- we would like to have an
18   accounting of what was available to the Board of
19   Elections during the petitioning period, what was
20   distributed, all the records, communications, e-mails
21   that were kept on file during that period, names of
22   candidates and so forth.  I could prepare a written
23   demand.
24             THE COURT:  Okay.  So it's just basically
25   written discovery.
```

1          MR. LESTER:  Their files pertaining all of

2     the procedural aspects of what they did during that

3     petitioning period.

4          MR. KITZINGER:  Your Honor --

5          MR. LESTER:  Again, I could put it more

6     artfully in a written demand.

7          MR. KITZINGER:  Mr. Lester (ui) the Board of

8     Elections office, either the general office at 32

9     Broadway or any of the borough offices, go to the

10    public access terminal, look at the ledger.  He can go

11    to the various offices to get the petitions.

12         THE COURT:  I think it might serve you well

13    to just start off with interrogatories, where this

14    information -- when and where this information was

15    provided.

16         MR. PEPPER:  Can I suggest that, since it

17    appears that a motion to dismiss would be ultimately

18    successful anyway from your own comments, that we

19    simply put off discovery until that's decided?

20         THE COURT:  No, because I think there are

21    going to be some factual disputes here, just based on

22    what I'm hearing.  So I think your motion may be

23    premature.

24         MR. KITZINGER:  Your Honor, based on my -- I

25    litigate virtually all of the election litigations in

1  the City of New York.  I've litigated <u>Rivera Powell</u>,

2  I've litigated -- and almost every case disappears on a

3  Rule 12 motion, for the simple reason that <u>Rivera</u>

4  <u>Powell</u> precludes it.  No one has yet pled an actual

5  federal claim in either the Eastern or Southern

6  District against the City Board of Elections since

7  <u>Rivera Powell</u>.  No one has successfully pled a claim.

8         And I would just suggest that -- especially

9  if we're talking about e-discovery, which we all know

10  is incredibly expensive and burdensome, and there is no

11  suggestion that there's any communications out there

12  that would relate to it.  And the books and records

13  related to the filings are publicly available, and he

14  can go down and look at them, pretty much whenever he

15  wants, during normal business hours.  That might be a

16  better place to start.  He can see what was filed, who

17  filed -- you can't see who filed because names aren't

18  taken, but you can see the documents on file, how they

19  were treated and what happened with the ballot.

20         MR. LESTER:  I can't see that -- again, I'll

21  prepare a list of items requested but I can't conceive

22  of how at this stage that Mr. Kitzinger could indicate

23  that every relevant, material item that we would

24  request for this lawsuit is publicly available.  There

25  are a lot of internal communications, I'm quite sure.

```
 1   Mr. Tiraco observed a lot of things that went on that
 2   certainly would not be in the public record and that
 3   should be discoverable.
 4         So at this point, I would like to have an
 5   opportunity to draft certainly a list of
 6   interrogatories and document requests, and whatever is
 7   publicly available, we'll obtain publicly.
 8         THE COURT:  I'm not going to stay discovery
 9   right now.  I did look at Rivera Powell and I'm not
10   sure -- I only skimmed it -- that the claims were
11   raised in the same manner.  It was primarily a due
12   process claim and the Second Circuit -- the equal
13   protection claim was somewhat different.
14         MR. KITZINGER:  Rivera Powell does not
15   require that claims be raised in the state court, only
16   that the Article 16 already be available.  And it's
17   very clear -- I don't know -- I'm not going to convince
18   you here.
19         THE COURT:  I don't spend two days doing
20   research for a conference.  I do know something about
21   election law and I did read Rivera Powell, so what can
22   I say?  I read the pre-motion letter and did briefly
23   consider some of the issues raised.
24         MR. PEPPER:  Well, the first issue from the
25   state court --
```

```
 1              THE COURT:  I'm not going to hear argument

 2    on it.  There's nothing to discuss right now, until the

 3    pre-motion letters are filed.  I think it's almost

 4    pointless having a further discovery conference, except

 5    if there are issues you can't resolve.  If you need --

 6    if you feel justified in moving for a stay, you'll move

 7    for a stay.

 8              I'll set a March discovery deadline.  That

 9    should give you enough time.

10              MR. LESTER:  Yes.

11              MR. KITZINGER:  Then the election will be

12    done.

13              MR. LESTER:  But there are broader issues

14    involved beyond just this election.

15              THE COURT:  So March 15$^{th}$.  I assume there

16    will be no further amendments contemplated after --

17    beyond this point.

18              MR. LESTER:  After this one, correct.

19              MR. KITZINGER:  I assume that's fact

20    discovery.  I don't know if we need any expert

21    discovery or --

22              THE COURT:  That's fact discovery.  I don't

23    think you're raising claims that require an expert.

24              MR. LESTER:  Well, I mean, there are people

25    expert in this field.  I'm not sure, again, what the
```

1   relevance of that -- of people expert in the issue of

2   ballot access and statistical analysis and so forth

3   but --

4             THE COURT:  We'll discuss that later on.

5   Let me first see what your proposed amended complaint

6   looks like.  We'll address that issue and then if we

7   need to have a conference after that, we will.  But in

8   any event, I will schedule an end of discovery

9   conference.

10            MR. LESTER:  Thank you, I appreciate that.

11                  * * * * * * * * *

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18        I certify that the foregoing is a correct

19   transcript from the electronic sound recording of the

20   proceedings in the above-entitled matter.

21

22

23

24

25   ELIZABETH BARRON                      August 17, 2012