UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X

JOSEPH E. TIRACO,

         Plaintiff,

                                **MEMORANDUM AND ORDER**

   -against-                         12-CV-2273 (KAM)(MDG)

NEW YORK STATE BOARD OF ELECTIONS;
BOARD OF ELECTIONS IN THE CITY OF
NEW YORK; and FRANK MACKAY,
Individually and as the presiding
Officer of the Independence Party of
the State of New York,

         Defendants.

------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

      On May 8, 2012, plaintiff Joseph E. Tiraco ("Plaintiff"), proceeding *pro se*, commenced this action pursuant to 42 U.S.C. § 1983, seeking injunctive and declaratory relief against the New York State Board of Elections (the "State Board") for alleged violations of his constitutional rights under the United States Constitution. (*See* ECF No. 1, Complaint dated 5/8/12.)  On June 20, 2012, Plaintiff filed an Amended Complaint, adding the Board of Elections in the City of New York (the "City Board") as a defendant and alleging a new claim for punitive damages against the State Board and the City Board (collectively, the "Boards"). (ECF No. 9, First Amended Complaint dated 6/20/12.)  On August 28, 2012, after retaining

counsel, Plaintiff filed a Second Amended Complaint, adding Frank MacKay ("MacKay") as a defendant, omitting his claim for punitive damages, and including additional factual allegations in support of his § 1983 claims. (*See generally* ECF No. 23, Second Amended Complaint dated 8/28/12 ("SAC").)

Presently before the court are the State Board's motions to dismiss Plaintiff's Second Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") and for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") and the City Board's motion to dismiss pursuant to Rule 12(b)(6). (ECF No. 36, State Board's Rule 12(b)(1) and 12(b)(6) Motions to Dismiss ("State Mot."); ECF No. 37, State Board's Memorandum of Law in Support ("State Mem."); ECF No. 38; State Board's Reply ("State Reply"); ECF No. 39, City Board's Rule 12(b)(6) Motion to Dismiss ("City Mot."); ECF No. 40, City Board's Memorandum of Law in Support ("City Mem."); ECF No. 41, City Board's Reply ("City Reply"); ECF No. 33, Plaintiff's Opposition to Motions to Dismiss ("Pl. Opp.").)  The State and City Boards' motions to dismiss are granted as set forth below, and Plaintiff's claims against the Boards are therefore dismissed with prejudice.

## BACKGROUND[1]

### I.   New York Election Law

Subject to limited exceptions not applicable here, an individual seeking to run in a primary election must be designated as a candidate for party nomination "by designating petition." N.Y. Elec. Law § 6-118.  A designating petition must contain a certain number of signatures from enrolled party members. *See* N.Y. Elec. Law § 6-136.  The number of required signatures varies depending on the public office to be filled. *See id.*  As is relevant in this case, designating petitions for potential party candidates for the United States House of Representatives must be signed by the lesser of 5% or 1,250 of the enrolled voters of the party residing in the congressional district.[2] *See* N.Y. Elec. Law § 6-136(2)(g).  In addition, New York Election Law provides for expedited judicial review of electoral disputes in New York Supreme Court to permit potential candidates who have been removed from the primary ballot to validate their designating petitions and thereby achieve ballot access. *See* N.Y. Elec. Law § 16-102 (establishing expedited

---

[1] The following facts are drawn from Plaintiff's Second Amended Complaint, the allegations of which are assumed to be true for purposes of the motions to dismiss, and from documents within the purview of judicial notice. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010); *Buch v. Farmingdale State Coll.*, No. 12-CV-1762, 2013 WL 789354, at *10-11 (E.D.N.Y. Mar. 4, 2013).  Because defendant MacKay has answered rather than moved to dismiss the Second Amended Complaint, (ECF No. 34, Defendant Frank MacKay's Answer ("MacKay Answer")), the court recites only those facts relevant to Plaintiff's claims against the Boards.

[2] As set forth herein, however, the number of required signatures was reduced in February 2012.

state court proceedings in which political candidates may
request the state court to validate designating petitions).

On February 9, 2012, Chief Judge Gary L. Sharpe of the
Northern District of New York reduced the number of statutorily
required signatures for designating petitions for the 2012
federal primary election and also adopted an election schedule
setting forth dates for the signature-gathering period for
designating petitions. *See* Memorandum and Order at 6, *United
States v. New York*, No. 10-CV-1214 (N.D.N.Y. Feb. 9, 2012), ECF
No. 64 (adopting New York State Board of Elections' Proposed
Calendar at 10-16, *United States v. New York*, No. 10-CV-1214
(N.D.N.Y. Feb. 1, 2012), ECF No. 61). Specifically, Chief Judge
Sharpe reduced the number of required signatures from 5% to
3.75% of the enrolled voters of the political party residing in
the congressional district. *Id.* Chief Judge Sharpe further
ordered that the signature-gathering period for designating
petitions would begin on March 20, 2012 and end on April 16,
2012. *Id.* On March 19, 2012, on the eve of the commencement of
the signature-gathering period, a three-judge panel of the
Eastern District of New York issued an order demarcating the
revised congressional district lines within New York and
appended to that order maps reflecting the revised congressional
district lines. *Favors v. Cuomo*, No. 11-CV-5632, 2012 WL 928223,
at *1, 2 n.5 (E.D.N.Y. Mar. 19, 2012). On February 28, 2012,

all filings in *Favors* were made available to the public at no cost through free access to the PACER service. *See* Docket, *Favors v. Cuomo*, No. 11-CV-5632 (E.D.N.Y.).

**II.** **Plaintiff's Attempt to Secure Ballot Access in March 2012**

During the signature-gathering period for the 2012 federal primary election, Plaintiff, a registered and longstanding member of the Independence Party of the State of New York (the "Independence Party"), attempted to secure ballot access to run for congressional office as the Independence Party candidate for the 6th Congressional District in Queens, New York. (*See* SAC ¶¶ 10-11, 40, 44.) In or around March 2012, Plaintiff circulated petitions to obtain signatures of enrolled Independence Party members, as required by New York Election Law. (*See id.* ¶ 40.) To facilitate his signature-gathering efforts, Plaintiff requested the Boards to provide him with: (a) a map of the 6th Congressional District setting forth the Election Districts and Assembly Districts; (b) the Independence Party enrollment book for the 6th Congressional District; (c) the number of enrolled Independence Party voters in the Congressional District; and (d) the number of signatures needed to qualify for ballot access as a candidate for Congress. (*See id.* ¶¶ 44-45.)

The Boards did not provide Plaintiff with the requested items and instead advised Plaintiff that the requested

5

items "were not expected before Mid-May." (*Id.* ¶ 45(d).)  The
Boards also informed Plaintiff that "they did not know the
number of enrolled Independence Party voters in the [6th]
Congressional [D]istrict and would not have the required
information during the entire petition cycle." (*Id.* ¶ 45(e).)
Plaintiff thereafter repeated his requests for the
aforementioned items, but the Boards insisted that the requested
items were not available at the time of Plaintiff's requests.[3]
(*Id.* ¶ 46.)

By the end of the signature-gathering period,
Plaintiff obtained 532 signatures, even without the items
requested from the Boards. (*See id.* ¶ 55.)  Nevertheless, the
City Board removed Plaintiff from the federal primary ballot
after a hearing because it determined that only 277 of the
collected signatures were valid, falling short of the 314-
signature requirement. (*See* ECF No. 33, Exh. A, Transcript of
Special Proceeding in *Tiraco v. Wang*, No. 12-CV-8953 (N.Y. Sup.
Ct. May 7, 2012) ("State Court Tr."), at 34, 38-39)[4]; *see also*

---

[3] Plaintiff acknowledges that the City Board ultimately disclosed
the requested information but asserts that the City Board did so only after
Plaintiff had already filed his designating petition. (*See* SAC ¶¶ 46, 58.)

[4] In his Opposition to the Boards' motions to dismiss, Plaintiff
annexes the transcript of his May 2012 state court proceeding.  In ruling on
the Boards' motions to dismiss, this court may properly consider the
transcript of Plaintiff's state court proceeding.  It is well-settled that a
"court may take judicial notice of a document filed in another court not for
the truth of the matters asserted in the other litigation, but rather to
establish the fact of such litigation and related filings." *Global Network
Comm'cns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)
(internal quotation marks omitted); *Johnson v. Cnty. of Nassau*, 411 F. Supp.

"Active Enrollment 2012 with Signature Requirements," New York State Board of Elections, http://www.elections.ny.gov/NYSBOE/law/TotalCountyEnrollmentSigRequirements2012Congress.pdf (last visited 8/7/13) (indicating that 314 signatures were required to obtain ballot access as Independence Party candidate in the 6th Congressional District).

On May 7, 2012, after his removal from the federal primary ballot, Plaintiff commenced a special expedited proceeding in New York Supreme Court pursuant to N.Y. Elec. Law § 16-102 in an effort to validate his designating petition and to reinstate his name on the ballot. (*See generally* State Court Tr.)  During that special proceeding, Plaintiff argued that the City Board failed to provide the minimum number of required signatures to obtain ballot access, failed to distribute electoral district maps, and failed to maintain personal voter registration records. (State Court Tr. 2-5.)  The state court, however, declined to consider these arguments because Plaintiff did not properly raise such arguments in his pleadings and

─────────────────────────────

2d 171, 178 (E.D.N.Y. 2006) ("[T]he Court may take judicial notice of the records of state administrative procedures as these are public records, without converting a motion to dismiss to one for summary judgment." (internal quotation marks omitted)).  Moreover, a court may also consider "public documents of which the plaintiff has notice." *Brodeur v. City of New York*, No. 04-CV-1859, 2005 WL 1139908, at *3 (E.D.N.Y. May 13, 2005) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)). Here, the May 2012 hearing transcript is a public document within the purview of judicial notice of which Plaintiff had notice.  Moreover, neither party appears to object to the court's consideration of the hearing transcript.  As such, the court may consider the May 2012 hearing transcript appended to Plaintiff's Opposition without converting the Boards' motions to dismiss into summary judgment motions.

failed to name the State of New York as a party in the state
court proceeding thus depriving the court of jurisdiction over
Plaintiff's constitutional claims. (*See id.* at 7, 34, 37-38.)
Accordingly, the state court dismissed Plaintiff's petition to
validate and denied his request for reinstatement to the primary
ballot in light of his failure to obtain the required 314
signatures. (*See id.* at 37-39.)  After the state court's
dismissal of his petition, Plaintiff commenced the instant
§ 1983 action in federal court.

## III. Plaintiff's Claims

Based on the foregoing factual allegations, Plaintiff
asserts that the Boards discriminatorily administered New York
State Election Law and thereby violated his constitutional
rights under the First and Fourteenth Amendments. (*Id.* ¶¶ 1, 59-
64.)  Specifically, Plaintiff maintains that the Boards
"intentionally withheld, failed to disclose and/or negligently
withheld relevant and material information necessary for
Plaintiff . . . to achieve ballot access." (SAC ¶ 48.)
Plaintiff further asserts that the Boards burdened his
associational rights by discriminatorily providing the requested
information to candidates favored by the Boards and Independence
Party leaders. (*Id.* ¶¶ 50-51, 55-56.)  Moreover, Plaintiff
alleges that the Boards provided him with out-of-date and

inaccurate information regarding the addresses of enrolled
Independence Party voters. (*See id.* ¶ 55.)

Plaintiff therefore requests the court "[t]o enter
judgment declaring and determining that actions of [the Boards]
violate[] the First and Fourteenth Amendments as applied to
Plaintiff." (SAC, Prayer for Relief ¶ 1.)  Additionally,
Plaintiff requests "equitable relief, including an injunction
restoring Plaintiff, Tiraco to the congressional ballot."[5] (*Id.*
¶ 2.)

## DISCUSSION

### I.   Standard of Review

#### A.   Rule 12(b)(1)

"'A case is properly dismissed for lack of subject
matter jurisdiction under Rule 12(b)(1) when the district court
lacks the statutory or constitutional power to adjudicate it.'"
*Roman v. C.I.A.*, No. 11-CV-5944, 2013 WL 210224, at *4 (E.D.N.Y.
Jan. 18, 2013) (quoting *Makarova v. United States,* 201 F.3d 110,
113 (2d Cir. 2000)).  It is well-settled that the "plaintiff
bears the burden of proving subject matter jurisdiction by a
preponderance of the evidence." *Aurecchione v. Schoolman Transp.*
*Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Luckett v.*
*Bure*, 290 F.3d 493, 497 (2d Cir. 2002)).  In reviewing a Rule

---

[5] Despite the time-sensitive nature of his request for injunctive
relief, Plaintiff did not proceed by Order to Show Cause or request expedited
consideration of his action, even after retaining counsel.

12(b)(1) motion to dismiss, the court "must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences from the complaint favorable to plaintiff[]." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).  Moreover, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.*

**B.   Rule 12(b)(6)**

To survive a Rule 12(b)(6) motion to dismiss, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although the court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007), Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Indeed, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d

10

328, 337 (2d Cir. 2006) (alterations in original) (internal
quotation marks omitted).

## II.  <u>Sovereign Immunity</u>

As a threshold matter, the State Board argues that
Plaintiff's claims against the State Board are barred by the
Eleventh Amendment.[6] (State Mem. at 3.)  The court agrees and
therefore grants the State Board's motion to dismiss.

The Eleventh Amendment to the United States
Constitution provides that "[t]he Judicial power of the United
States shall not be construed to extend to any suit in law or
equity, commenced or prosecuted against one of the United States

---

[6] The State Board raises its sovereign immunity defense in a
motion to dismiss under Rule 12(b)(1), rather than Rule 12(b)(6). (State Mem.
at 3; State Reply at 1-2.)  Notably, there remains some uncertainty in the
Second Circuit regarding the appropriate vehicle for a sovereign immunity
defense. *See, e.g.*, *Iwachiw v. N.Y. City Bd. of Elections*, No. 12-CV-3520,
2013 WL 3110839, at *2 n.1 (S.D.N.Y. June 20, 2013); *Anghel v. N.Y. State
Dep't of Health*, No. 12-CV-3484, 2013 WL 2338153, at *7-8 (E.D.N.Y. May 29,
2013).  On one hand, the "Second Circuit has held that an action is properly
dismissed for lack of subject matter jurisdiction where a plaintiff's claims
are barred by the Eleventh Amendment." *McMillan v. N.Y. State Bd. of
Elections*, No. 10-CV-2502, 2010 WL 4065434, at *3 (E.D.N.Y. Oct. 15, 2010)
(citing *Madden v. Vt. Supreme Court*, 8 F. App'x 128, 129 (2d Cir. 2001)),
*aff'd*, 449 F. App'x 79 (2d Cir. 2011) (summary order).  On the other hand,
the Second Circuit has more recently "stated in dicta that Eleventh Amendment
[sovereign] immunity may not be a matter of subject matter jurisdiction
governed by Fed. R. Civ. P. 12(b)(1) when raised in a motion to dismiss, and
might be more properly treated as a challenge to the legal sufficiency of the
complaint under Fed. R. Civ. P. 12(b)(6)." *Id.* (citing *State Emps. Bargaining
Agent Coal. v. Rowland,* 494 F.3d 71, 77 n.4 (2d Cir. 2007)).  As previously
noted, the distinction between a Rule 12(b)(1) and Rule 12(b)(6) motion
determines the materials and submissions that this court may consider and the
inferences that this court may draw in adjudicating the State Board's motion
to dismiss.  This distinction, however, does not alter the outcome in this
case.  In evaluating the State Board's sovereign immunity defense, the court
has considered only the pleadings and the relevant state and federal law and
has drawn all inferences in Plaintiff's favor. *See id.*  Having done so, the
court need not resolve the issue of whether the State Board's Rule 12(b)(1)
motion to dismiss based on sovereign immunity grounds is more appropriately
construed under Rule 12(b)(6).

by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has long held that the Eleventh Amendment bars suits against a state by one of its own citizens. *See Hans v. Louisiana,* 134 U.S. 1, 10-11 (1890). Sovereign immunity under the Eleventh Amendment also extends to state agencies that are "arms of the state."[7] *See Walker v. City of Waterbury*, 253 F. App'x 58, 60 (2d Cir. 2007) (citing *Mancuso v. N.Y. State Thruway Auth.*, 86 F.3d 289, 292 (2d Cir. 1996)); *Dekom v. New York*, No. 12-CV-1318, 2013 WL 3095010, at *10 (E.D.N.Y. June 18, 2013) (holding that sovereign immunity "also applies to claims against State agencies").

There are three limited exceptions to state sovereign immunity. First, a state may waive its sovereign immunity by consenting to suit in federal court. *Iwachiw v. N.Y. City Bd. of Elections*, 217 F. Supp. 2d 374, 379 (E.D.N.Y. 2002) (citing *Coll. Sav. Bank v. Fl. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999)), *aff'd*, 126 F. App'x 27 (2d Cir. 2005) (summary order). Second, Congress may abrogate state sovereign immunity by acting pursuant to a grant of constitutional authority. *Id.* (citing *Kimel v. Fl. Bd. of Regents*, 528 U.S. 62, 80 (2000)). Third, under the *Ex parte Young* doctrine, sovereign immunity does not preclude a plaintiff from seeking prospective

---

[7] It is undisputed that the State Board, a New York state executive agency, is an "arm of the state" entitled to sovereign immunity. *E.g.*, *McMillan*, 2010 WL 4065434, at *3 & n.2 (citing N.Y. Elec. Law. § 3-100(1)).

injunctive relief or declaratory relief against a state official acting in his or her official capacity for ongoing violations of federal law. *State Emps. Bargaining Agent Coal. v. Rowland,* 494 F.3d 71, 95 (2d Cir. 2007); *Anghel v. N.Y. State Dep't of Health*, No. 12-CV-3484, 2013 WL 2338153, at *9 (E.D.N.Y. May 29, 2013) (holding that "the doctrine of *Ex Parte Young* . . . 'allows a suit for injunctive [or declaratory] relief challenging the constitutionality of a state official's actions in enforcing state law'" (alteration in original) (quoting *CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002))).

None of these exceptions apply in the instant case. New York has not expressly waived its sovereign immunity with respect to the claims asserted in Plaintiff's Second Amended Complaint. *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974) ("[W]e will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.'" (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909))).  "It is well-established that New York has not consented to § 1983 lawsuits in federal court . . . ." *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010); *see also Dekom*, 2013 WL 3095010, at *10 (dismissing § 1983 claims against the State Board on Eleventh Amendment immunity grounds);

*Iwachiw*, 217 F. Supp. 2d at 379-80 (noting that New York has not
waived Eleventh Amendment immunity in suits involving potential
United States Senatorial write-in candidates); *cf. Rzayeva v.
United States*, 492 F. Supp. 2d 60, 73 (D. Conn. 2007) ("Section
1343, which confers original jurisdiction on federal courts to
hear § 1983 claims, does not supply a basis or a claim for
relief; therefore it cannot save Plaintiff's claims against the
State from its Eleventh Amendment immunity." (citation
omitted)).

Nor has Congress abrogated New York's sovereign
immunity from suit by acting pursuant to a grant of
constitutional authority.  Indeed, none of the federal statutes
invoked by Plaintiff — namely, 42 U.S.C. § 1983, 28 U.S.C.
§ 1343, and 28 U.S.C. § 1331 — override New York's sovereign
immunity. *Sierotowicz v. N.Y. Div. of Hous. & Cmty. Renewal*, No.
04-CV-3886, 2005 WL 1397950, at *1 (E.D.N.Y. June 14, 2005)
(holding that 42 U.S.C. § 1983, 28 U.S.C. § 1343, and 28 U.S.C.
§ 1331 do not abrogate New York's Eleventh Amendment sovereign
immunity).

Finally, the *Ex parte Young* doctrine does not salvage
Plaintiff's claims for injunctive and declaratory relief against
the State Board, notwithstanding Plaintiff's misguided
assertions to the contrary.  Although Plaintiff purports to seek
prospective injunctive and declaratory relief, (Pl. Opp. at 9-

14

11), he "does not follow the requirement, established in *Ex Parte Young*, that a plaintiff seeking prospective relief from the state must name as defendant a state official rather than the state or a state agency directly." *Santiago v. N.Y. State Dep't of Corr. Servs.*, 945 F.2d 25, 32 (2d Cir. 1991) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984)); *Melrose v. N.Y. State Dep't of Health Office of Prof'l Med. Conduct*, No. 05-CV-8778, 2009 WL 211029, at *5 (S.D.N.Y. Jan. 26, 2009) ("[T]he Second Circuit still requires that state officers be named in order for the *Ex Parte Young* exception to apply."); *Harris v. N.Y. State Educ. Dep't*, 419 F. Supp. 2d 530, 534 (S.D.N.Y. 2006) ("Actions for injunctive relief under the *Ex parte Young* exception to [sovereign immunity] constitute suits against state officials, not against the state or state agency itself."). Specifically, in his Second Amended Complaint, Plaintiff has sued the State Board, a New York state agency, and has failed to name any state official as a defendant. Consequently, Plaintiff's reliance on the *Ex parte Young* doctrine is unavailing, and the Eleventh Amendment remains a bar to Plaintiff's claims against the State Board.[8]

---

[8] Furthermore, as explained in further detail below, Plaintiff fails to adequately plead any violation of federal law, much less an *ongoing* violation of federal law as required by the *Ex parte Young* doctrine. *See Green v. Mansour*, 474 U.S. 64, 68 (1985) ("[T]he Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law."); *Malkan v. Mutua*, No. 12-CV-236-A, 2012 WL 4722688, at *6 (W.D.N.Y. Oct. 3, 2012) ("Under *Ex parte Young,* a federal court is only permitted to grant injunctive relief against future

Because none of the exceptions to the State Board's sovereign immunity apply, Plaintiff's claims against the State Board are barred by the Eleventh Amendment and must be dismissed.

## III. <u>Failure To State a Claim</u>[9]

Pursuant to Rule 12(b)(6), the City Board moves to dismiss Plaintiff's § 1983 claims for failure to state a claim upon which relief can be granted. (City Mot.; City Mem. at 8-11.)  Although Plaintiff's Second Amended Complaint formally alleges only an associational rights claim under the First Amendment against the City Board, (*see* SAC ¶¶ 59-64), Plaintiff's allegations can alternatively be construed to raise either a due process claim or an equal protection claim under

---

violations of federal law."). Apart from Plaintiff's conclusory allegations that the State Board "will continue to deprive candidates of their right to obtain a place on the ballot," (SAC ¶ 60), the nonconclusory factual allegations in the Second Amended Complaint are limited to the State Board's past failure to provide Plaintiff with the 6th Congressional District map and information about Independence Party voters, (*see id.* ¶¶ 44-46).  Even if the State Board's purported misconduct constituted a violation of federal law, which it does not, Plaintiff's Second Amended Complaint is bereft of any nonconclusory allegations that such misconduct or any harm caused thereby is ongoing. *Ex parte Young* is thus inapposite for this reason as well.

[9] Having dismissed Plaintiff's claims against the State Board as barred by the Eleventh Amendment, the court need not reach the State Board's alternative argument that Plaintiff's § 1983 claims fail on their merits.  In any event, the court's reasons for dismissing Plaintiff's § 1983 claims against the City Board for failure to state a claim apply with equal force to Plaintiff's claims against the State Board.  Moreover, Plaintiff's § 1983 claims against the State Board also fail on the merits because state agencies are not "persons" subject to suit under § 1983. *E.g.*, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 63-66 (1989); *Rubin v. N.Y. State Dep't of Motor Vehicles*, No. 10-CV-4119, 2010 WL 3842011, at *2 (E.D.N.Y. Sept. 28, 2010) ("The Supreme Court has determined . . . that states and state agencies are not 'persons' subject to suit under § 1983.").  Consequently, even if Plaintiff's claims against the State Board were not precluded by sovereign immunity, Plaintiff's Second Amended Complaint fails to state a § 1983 claim against the State Board.

the Fourteenth Amendment, (*see* Pl. Opp. at 8-9).  Because
Plaintiff's Second Amended Complaint fails to state a plausible
claim for relief under all three constitutional provisions, the
City Board's Rule 12(b)(6) motion to dismiss is granted, and
Plaintiff's claims against the City Board are dismissed.

### A.   Fourteenth Amendment Due Process Claim

First, Plaintiff's Second Amended Complaint fails to
state a Fourteenth Amendment due process claim.  The Fourteenth
Amendment to the United States Constitution provides that "[n]o
state shall . . . deprive any person of life, liberty, or
property, without due process of law." U.S. Const. amend. XIV.
"[T]he threshold question in adjudicating [a] due process claim
is whether [Plaintiff] possessed a liberty or property
interest." *Leroy v. N.Y. City Bd. of Elections*, 793 F. Supp. 2d
533, 537 (E.D.N.Y. 2011); *Douglas v. Niagara Cnty. Bd. of
Elections*, No. 07-CV-609A, 2007 WL 3036809, at *3 (W.D.N.Y. Oct.
16, 2007).  Plaintiff here has failed to allege a liberty or
property interest secured by the Due Process Clause.  "An
individual has no property or liberty interest in an elected
office.  Nor does he have such an interest in being elected, or
in appearing on a ballot." *McMillan v. N.Y. State Bd. of Elections*,
No. 10-CV-2502, 2010 WL 4065434, at *8 (E.D.N.Y. Oct. 15, 2010)
(citations omitted), *aff'd*, 449 F. App'x 79 (2d Cir. 2011) (summary
order); *see also Leroy*, 793 F. Supp. 2d at 537 ("The Supreme

Court has long held that there is no property or liberty
interest in an elected office." (internal quotation marks
omitted)); *Douglas*, 2007 WL 3036809, at *4 ("Many years ago, the
Supreme Court made clear that there is no property or liberty
interest in an elected office."); *Cornett v. Sheldon*, 894 F.
Supp. 715, 725-26 (S.D.N.Y. 1995) (holding that a candidate for
federal office possessed neither property nor liberty interest
in being placed on the ballot).  Having failed to allege a
constitutionally protected liberty or property interest,
Plaintiff's Second Amended Complaint fails to state a plausible
claim for relief under the Due Process Clause.

But, even assuming *arguendo* that Plaintiff was
deprived of some constitutionally protected property or liberty
interest, the City Board's alleged actions here did not violate
fundamental due process principles because Plaintiff was
provided adequate process.  "The Due Process Clause does not
protect against all deprivations of constitutionally protected
interests in life, liberty, or property, 'only against
deprivations without due process of law.'" *Rivera-Powell v. N.Y.
City Bd. of Elections*, 470 F.3d 458, 464 (2d Cir. 2006) (quoting
*Parratt v. Taylor*, 451 U.S. 527, 537 (1981)).  Plaintiff's
Second Amended Complaint alleges that the City Board violated
Plaintiff's constitutional rights and denied him access to the
congressional ballot by failing to timely provide him with the

6th Congressional District map and information about Independence Party voters. (SAC ¶¶ 48, 50-51, 55-56, 59-64.)   To determine whether the City Board's alleged actions violated Plaintiff's due process rights, "it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Rivera-Powell*, 470 F.3d at 465 (internal quotation marks omitted).   "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).   Moreover, due process "requires only that the state afford a party threatened with a deprivation . . . a process involving pre-deprivation notice and access to a tribunal in which the merits of the deprivation may be fairly challenged." *Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 151-52 (2d Cir. 2010).   Three factors must be balanced to determine whether Plaintiff was afforded due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the

> additional or substitute procedural
> requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Notably, in *Rivera-Powell*, the Second Circuit applied the *Mathews* three-part balancing test and held that the procedures established by New York Election Law afford potential political candidates adequate due process. *See* 470 F.3d at 465-67; *Leroy*, 793 F. Supp. 2d at 538 ("Critically, the Second Circuit has already approved the post-deprivation process provided to potential candidates under New York Election law."). In *Rivera-Powell*, the plaintiff sought ballot access to run for office as a judge of the New York City Civil Court but was removed from the primary ballot by the City Board because her designating petition was deficient under New York Election Law. *See* 470 F.3d at 460-64. To contest her removal, the plaintiff in *Rivera-Powell* commenced an expedited proceeding in New York Supreme Court pursuant to N.Y. Elec. Law § 16-102. *Id.* at 464. The state court dismissed the proceeding for lack of jurisdiction because the plaintiff's complaint failed to comply with certain statutory pleading requirements. *Id.* Rather than appeal the dismissal to the Appellate Division, the plaintiff commenced a § 1983 action in federal court, alleging violations of his due process, equal protection, and associational rights under the First and Fourteenth Amendments. *See id.*

In rejecting the plaintiff's Fourteenth Amendment due process claims, the Second Circuit reasoned that "the process provided to [the plaintiff] was adequate" because the City Board held a hearing prior to removing the plaintiff from the ballot and because the plaintiff "had the opportunity to obtain full judicial review by way of a special proceeding under New York Election Law section 16-102." *Id.* at 466-67.  According to the Second Circuit, "[t]he combination of these two procedures satisfie[d] due process," *id.* at 467, by providing the plaintiff with "a pre-deprivation hearing and an adequate judicial procedure by which to challenge any alleged illegalities in the Board's action," *id.* at 464.

Guided by the principles set forth in *Rivera-Powell*, the court finds that Plaintiff was afforded sufficient process through which to challenge his removal from the congressional ballot by the City Board.  Like the plaintiff in *Rivera-Powell*, Plaintiff here received a pre-deprivation hearing before the City Board on May 1, 2012, (*see* State Court Tr. at 34),[10] and thereafter obtained judicial review of the City Board's adverse determination in New York Supreme Court on May 7, 2012, (*see id.*

---

[10] Significantly, at least one district court in this Circuit has held that even if the City Board did not hold a hearing before removing a candidate from the ballot, the availability of a special proceeding under N.Y. Elec. Law § 16-102 satisfies due process. *Murawksi v. Pataki*, 514 F. Supp. 2d 577, 586 n.5 (S.D.N.Y. 2007) ("Even in the absence of an opportunity to be heard prior to a BOE decision, however, the statutory provision for an expedited review of that determination by the New York Supreme Court provides adequate pre-deprivation review and satisfies due process requirements.").

at 1-7).  As in *Rivera-Powell*, the combination of these two
hearings provided Plaintiff with sufficient notice and ample
opportunity to contest the City Board's allegedly
unconstitutional conduct, including the City Board's purported
failure to provide Plaintiff with a congressional district map
and Independence Party voter registration information. *Leroy*,
793 F. Supp. 2d at 540 ("[E]ven if a board's ballot access
determination is the 'deprivation', New York's two-track system
offers candidates pre-deprivation review opportunities on both
tracks — at the [City Board] hearing and by way of the § 16-102
petition to validate."); *see also Thomas v. N.Y. City Bd. of
Elections*, 898 F. Supp. 2d 594, 599 (S.D.N.Y. 2012); *Minnus v.
Bd. of Elections in the City of N.Y.*, No. 10-CV-3918, 2010 WL
3528544, at *4 (E.D.N.Y. Sept. 3, 2010).

That the New York Supreme Court ultimately refused to
consider Plaintiff's allegations regarding the City Board's
alleged misconduct does not alter the fact that Plaintiff
received adequate process.  Indeed, the state court declined to
consider Plaintiff's claims against the City Board because he
failed to properly include such claims in his petition to
validate as required by New York law. (State Court Tr. at 37-
38.)  Like in *Rivera-Powell*, where the plaintiff's § 16-102
proceeding was dismissed due to her failure to comply with
statutory pleading requirements, 470 F.3d at 464, the state

court's dismissal of Plaintiff's constitutional claims based on procedural defects in his petition did not run afoul of the Due Process Clause, *see Leroy*, 793 F. Supp. 2d at 541 ("Leroy's failure to timely file her special proceeding [pursuant to § 16-102] does not change the fact that adequate post-deprivation procedures were available to her.").

Notably, even if the New York Supreme Court had considered Plaintiff's claims against the City Board, that court would likely have rejected Plaintiff's claims on the merits. Indeed, as the City Board accurately notes, and as Plaintiff does not dispute in his Opposition, the City Board had no obligation under New York law to provide Plaintiff with the requested congressional district map or voter registration records. (*See* City Mem. at 9 n.5.; Pl. Opp.)  First, with respect to the 6th Congressional District map, New York Election Law does not require the City Board to publish maps of congressional districts or to provide such maps to potential candidates, and Plaintiff cites no statutory provision to the contrary in his Opposition. *Cf.* N.Y. Elec. Law § 4-102(1) ("The *state board* of elections, at the expense of the state, shall publish maps showing the county or counties contained in each of the congressional districts, senatorial districts and assembly districts of the state." (emphasis added)).  In any event, even if New York Election Law imposed such a requirement on the City

23

Board, the map for the 6th Congressional District was appended to the Eastern District of New York's March 19, 2012 order and was therefore readily available to Plaintiff via PACER before the signature-gathering period began on March 20, 2012. *Favors*, 2012 WL 928223, at *1, 2 n.5; *see also Grimm v. Bd. of Elections in City of N.Y.*, 35 Misc. 3d 1233(A), at *4 (N.Y. Sup. Ct. May 23, 2012) (noting that the congressional district maps were promulgated by the federal court in March 2012).

As to the Independent Party enrollment information requested by Plaintiff,[11] New York Election law only requires the City Board to publish such information by *Election* District, rather than by Congressional District. *See* N.Y. Elec. Law § 5-602 ("[T]he board of elections shall cause to be published a complete list of names and residence addresses of the registered voters for each *election* district over which the board has jurisdiction." (emphasis added)); N.Y. Elec. Law § 5-604 ("The board of elections shall also cause to be published for each *election* district a complete list of the registered voters of each election district. . . . Such lists shall be published before the first day of April." (emphasis added)); *see also*

---

[11] Plaintiff specifically requested (1) the Independence Party enrollment book, (2) the number of enrolled Independence Party voters in the 6th Congressional District, and (3) the number of signatures needed to qualify for ballot access. (SAC ¶¶ 44-45.) As the City Board notes, these three sets of items are arguably "redundant" because the number of enrolled Independence Party voters can be determined by reviewing the enrollment book and the number of required signatures for ballot access is 3.75% of the total number of enrolled Independence Party voters. (*See* City Reply at 2.)

*Grimm*, 35 Misc. 3d 1233(A), at *4 ("There is no requirement that the voter lists be promulgated by Congressional District."). Plaintiff does not, and cannot, dispute that the City Board discharged its duty under New York law to timely publish the Independence Party voter registration records by Election District.  As one New York state court has already recognized in a substantially similar case, the City Board "promulgated [the voter registration] lists prior to April 1, 2012," posted the preliminary enrollment list of voters on its website on April 6, 2012, and made all voter information available online "no later than April 9, 2012, seven days before the end of the signature-gathering process." *See Grimm*, 35 Misc. 3d 1233(A), at *4.

    As such, far from violating Plaintiff's constitutional due process rights, the City Board fulfilled its obligations under New York Election Law and afforded Plaintiff adequate due process before removing him from the federal primary ballot. Plaintiff's Second Amended Complaint therefore fails to state a plausible claim for relief under the Due Process Clause.

**B.   First Amendment Associational Rights Claim**

    Plaintiff also fails to adequately plead a violation of his First Amendment associational rights.  It is well settled that the First Amendment protects "the rights of candidates and their supporters 'to organize, access the ballot, and vote for the candidate of their choice.'" *McMillan*, 2010 WL 4065434, at

*10 (citing *Rivera-Powell*, 470 F.3d at 468); *see also Anderson v. Celebrezze*, 460 U.S. 780, 787-88 (1983); *Thomas*, 898 F. Supp. 2d at 598. Notably, in *Rivera-Powell*, the Second Circuit expounded upon the unique relationship between First Amendment associational rights claims and Fourteenth Amendment due process claims in certain ballot access cases. *See* 470 F.3d at 468-70. In particular, the Second Circuit clarified that

> [w]hen, as here, a plaintiff challenges a Board of Election decision not as stemming from a constitutionally or statutorily invalid law or regulation, but rather as contravening a law or regulation whose validity the plaintiff does not contest, there is no independent burden on First Amendment rights when the state provides adequate procedures by which to remedy the alleged illegality.

*Id.* at 469; *see also id.* at 469-70 ("[W]hen a candidate raises a First Amendment challenge to his or her removal from the ballot based on the allegedly unauthorized *application* of an admittedly valid restriction, the state has satisfied the First Amendment if it has provided due process.").

In the instant case, Plaintiff does not dispute the facial validity of any state law or regulation but rather "challenges the manner in which the . . . City Board . . . administer[s] the New York State Election law to favor incumbent candidates supported by the leadership of the Independence, Democratic and Republican Parties." (SAC ¶ 1; *see also* SAC,

Prayer for Relief ¶ 1.)  Specifically, Plaintiff argues that the City Board's failure to provide him with the 6th Congressional District map and Independence Party voter information and the City Board's subsequent removal of his name from the federal primary ballot violated his associational rights. (SAC ¶¶ 59-64.)  Like the plaintiff in *Rivera-Powell*, Plaintiff "alleges no additional deprivation of [his] First Amendment interests independent from the [alleged] deprivation that forms the basis of [his] due process claim." 470 F.3d at 468.  Thus, Plaintiff's First Amendment claim is "inextricably intertwined with the question of whether the state afforded [him] procedurally adequate process." *Id*. at 469.  Consequently, because, as previously discussed, Plaintiff was afforded "adequate procedures by which to remedy" the City Board's alleged misconduct, his First Amendment associational rights claim necessarily fails. *Id*. ("Because . . . we find that Rivera-Powell's and her co-plaintiffs' due process claim fails, their First Amendment claim likewise fails."); *see also Minnus*, 2010 WL 3528544, at *4.

Furthermore, even assuming that Plaintiff's due process and associational rights claims were not "inextricably intertwined" and that *Rivera-Powell* were therefore not fatal to Plaintiff's First Amendment claim, Plaintiff's associational rights claim fails for other reasons.  At its core, Plaintiff's

27

First Amendment claim is premised on the misguided and unsubstantiated notion that he did not receive a fair opportunity to run in the federal primary election as the Independence Party candidate because of the City Board's alleged misconduct.  But the Supreme Court has plainly held the First Amendment does not enshrine "a 'fair shot' at winning the party's nomination." *N.Y. State Bd. of Elec. v. Lopez Torres*, 552 U.S. 196, 205 (2008); *see also Munro v. Socialist Workers Party*, 479 U.S. 189, 198 (1986) ("States are not burdened with a constitutional imperative . . . to 'handicap' an unpopular candidate to increase the likelihood that the candidate will gain access to the . . . ballot.").  Moreover, as previously discussed, and as Plaintiff fails to address in his Opposition, the City Board had no obligation under New York law to provide Plaintiff with the map and voter information that he requested. And, even assuming Plaintiff had a right to any of the requested materials, Plaintiff had access to the 6th Congressional District map on May 19, 2012, *see Favors*, 2012 WL 928223, at *1, 2 n.5, and to the relevant Independence Party voter information on April 9, 2012, *see Grimm*, 35 Misc. 3d 1233(A), at *4, before the expiration of the signature-gathering period on April 16th. Thus, the City Board's alleged failure to provide Plaintiff with the requested materials – which were, in any event, readily accessible to him and all other New York political candidates

28

before the expiration of the signature-gathering period – did not give rise to a violation of Plaintiff's associational rights.  Plaintiff remained "wholly free to associate, to proselytize, to speak, to write, and to organize campaigns for any school of thought," *Munro*, 479 U.S. at 198 (internal quotation marks omitted), and his associational rights claim is therefore meritless.

### C.  Fourteenth Amendment Equal Protection Claim

Finally, Plaintiff's conclusory allegations likewise fail to state a viable Fourteenth Amendment equal protection claim.  The Equal Protection Clause prohibits the government from denying "'any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. Const. amend. XIV); *Herschaft v. N.Y. Bd. of Elections*, No. 00-CV-2748, 2001 WL 940923, at *6 (E.D.N.Y. Aug. 13, 2001), *aff'd*, 37 F. App'x 17 (2d Cir. 2002).  The Second Circuit has held that "a § 1983 action to remedy errors in the election process allegedly violating the equal protection clause does not exist unless the state action constituted 'intentional or purposeful discrimination.'" *Gold v. Feinberg*, 101 F.3d 796, 800 (2d Cir. 1996) (quoting *Powell v. Power*, 436 F.2d 84, 88 (2d Cir. 1970)); *Diaz v. N.Y. City Bd. of Elections*, 335 F. Supp. 2d

364, 367 (E.D.N.Y. 2004).  Thus, to state an equal protection
claim, Plaintiff must allege that the City Board intentionally
discriminated against him, "either by adopting out of
[discriminatory] animus policies which are facially neutral but
have a . . . discriminatory effect, or by applying a facially
neutral policy in a . . . discriminatory manner." *Rivera-Powell*,
470 F.3d at 470 (citing *Hayden v. Cnty. of Nassau,* 180 F.3d 42,
48 (2d Cir. 1999)); *Piccolo v. N.Y City Campaign Fin. Bd.*, No.
05-CV-7040, 2007 WL 2844939, at *11 (S.D.N.Y. Sept. 28, 2007)
(quoting *Hayden*, 180 F.3d at 48).  "To establish such
intentional or purposeful discrimination, it is axiomatic that a
plaintiff must allege that similarly situated persons have been
treated differently." *Gagliardi v. Vill. of Pawling*, 18 F.3d
188, 193 (2d Cir. 1994).  Conclusory allegations of intentional
discrimination, "without evidentiary support or allegations of
particularized incidents, do[] not state a valid claim and so
cannot withstand a motion to dismiss." *Rivera-Powell*, 470 F.3d
at 470 (internal quotation marks omitted); *see also Piccolo*,
2007 WL 2844939, at *11 ("Conclusory allegations of intentional
discrimination will not suffice to sustain a claim on a motion
to dismiss . . . .").

        In his Second Amended Complaint, Plaintiff alleges
that the City Board discriminatorily administered the New York
Election Law "to favor incumbent candidates supported by the

30

leadership of the Independence, Democratic and Republican Parties," (SAC ¶ 1; *see also id.* ¶¶ 55-56), and that the City Board "singled out Plaintiff . . . and other insurgent candidates for special treatment by denying Plaintiff . . . access to information and documents that were provided to candidates favored by party leaders," (*id.* ¶ 63; *see also id.* ¶ 51).  Plaintiff's allegations, however, amount to nothing more than conclusory assertions devoid of adequate factual enhancement that would render plausible his equal protection claim.  Rather than setting forth "allegations of particularized incidents" of discrimination, Plaintiff's Second Amended Complaint instead proffers only vague and conclusory references to unidentified "candidates favored by party leaders," who, on unspecified dates, received the map and voter information that Plaintiff requested, but allegedly did not receive, from the City Board.[12] (*Id.* ¶¶ 51, 63.)  Conspicuously absent from the Second Amended Complaint are any nonconclusory allegations that Plaintiff was a member of a protected class, that the City Board intentionally discriminated against him based on his membership in any protected class, or that the unnamed "favored" candidates who received the items he requested were similarly situated to Plaintiff in all relevant respects. *Gagliardi,* 18 F.3d at 193.

---

[12] In any event, as discussed above, the map and information requested by Plaintiff were available to him, and to all potential congressional candidates, before the end of the signature-gathering period.

Plaintiff's allegations are therefore inadequate to sustain a plausible equal protection claim.

Although not raised by the parties, the court finds that Plaintiff also fails to state an equal protection claim under a "class of one" theory.  The Second Circuit has recognized that, "[w]hile [the Equal Protection Clause] 'is most commonly used to bring claims alleging discrimination based on membership in a protected class,' it may also be used to bring a 'class of one' equal protection claim." *Prestopnik v. Whelan*, 249 F. App'x 210, 212 (2d Cir. 2007) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005)).  "In a 'class of one' case, the plaintiff uses 'the existence of persons in similar circumstances who received more favorable treatment than the plaintiff . . . to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose – whether personal or otherwise – is all but certain.'" *Id.* at 212-13 (quoting *Neilson*, 409 F.3d at 105).  To sustain a "class of one" equal protection claim, Plaintiff must allege that he was "'treated differently than someone who is *prima facie* identical in all relevant respects.'" *See id.* at 213 (quoting *Neilson*, 409 F.3d at 104); *Leroy*, 793 F. Supp. 2d at 543.  As previously noted, the Second Amended Complaint is devoid of any, much less nonconclusory, allegations that give

rise to a plausible inference that the unnamed "favored" candidates referenced by Plaintiff are identical to Plaintiff in all relevant respects.  Indeed, Plaintiff provides no further factual details about the unnamed "favored" candidates, apart from those candidates' apparent support from party leaders. Moreover, as discussed earlier, Plaintiff does not allege sufficient facts to give rise to a plausible inference that the City Board singled him out.  Rather, Plaintiff relies upon the speculative allegation that the City Board failed to provide him with certain documents because he was an insurgent candidate. As a result, Plaintiff's equal protection claim fails on the "class of one" theory as well.

Having alleged only naked assertions devoid of further factual enhancement, *Iqbal*, 556 U.S. at 678, Plaintiff fails to state a plausible claim for relief under the Equal Protection Clause.

Because Plaintiff's § 1983 claim fails as a due process claim, an associational rights claim, and an equal protection claim, the City Board's Rule 12(b)(6) motion is granted, and Plaintiff's claims against the City Board are dismissed in their entirety.

## IV.  <u>Leave to Replead</u>

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "the court should freely give leave [to amend a pleading] when

justice so requires." *In re Advanced Battery Techs., Inc. Sec. Litig.*, No. 11-CV-2279, 2013 WL 3784134, at *5 (S.D.N.Y. July 18, 2013) (alteration in original) (internal quotation marks omitted). Leave to replead should be denied, however, when amendment would be futile or when Plaintiff has repeatedly failed to cure the deficiencies in his pleadings. *Id.* (citing *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 127 (2d Cir. 2007)); *Gargiulo v. Forster & Garbus Esqs.*, 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009) ("I may deny leave to replead when the plaintiff has repeatedly failed to cure the deficiencies in his complaint or when amendment would be futile.").

In this case, the court finds that Plaintiff has repeatedly failed to cure the deficiencies in his complaint and that further amendment would be futile. After amending his complaint twice, Plaintiff, now represented by counsel, has yet again crafted a deficient pleading, replete with conclusory allegations and meritless claims, some of which are barred by sovereign immunity. Moreover, to the extent that Plaintiff could have named appropriate State officials as defendants to invoke the *Ex parte Young* doctrine or could have alleged facts sufficient to surmount a motion to dismiss, he could have and should have done so in his Second Amended Complaint with the aid of counsel. Having failed to do so, Plaintiff does not deserve,

nor does he request, a fourth opportunity to assert his baseless claims against the Boards, and leave to replead is therefore denied.

## CONCLUSION

For the reasons set forth above, the State Board's motion to dismiss on sovereign immunity grounds and the City Board's motion to dismiss for failure to state a claim are granted, and Plaintiff's claims against the Boards are dismissed with prejudice.  Plaintiff and remaining defendant Frank MacKay shall file a joint status letter via ECF on or before August 14, 2013, informing the court as to how the parties wish to proceed with respect to the remaining claims in the Second Amended Complaint.


**SO ORDERED.**

**Dated**:      August 7, 2013
        Brooklyn, New York


                          _____/s/_____
                          **KIYO A. MATSUMOTO**
                          United States District Judge
                          Eastern District of New York